IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

```
MARIE AYERS                         )
                                    )  No. 2:04-0080
v.                                  )  Judge Nixon/Brown
                                    )
JO ANNE B. BARNHART, Commissioner   )
of Social Security                  )
```

To: The Honorable John T. Nixon, Senior Judge

**REPORT AND RECOMMENDATION**

This is a civil action filed pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying claimant disability insurance benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"), as amended. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 17), to which defendant has responded (Docket Entry No. 20). For the reasons stated below, the Magistrate Judge recommends that plaintiff's motion be **DENIED**, and that the decision of the Commissioner be **AFFIRMED.**

I. Introduction

Plaintiff filed for DIB payments based on disability on January 9, 2003, alleging that she had been disabled since February 1, 1999 due to multiple joint pain, hypertension, osteopenia, and obesity. The application was denied initially and upon reconsideration (Tr. 17-20). Plaintiff then requested a

1

hearing before an administrative law judge ("ALJ") (Tr. 27). A hearing on plaintiff's DIB application was scheduled for October 6, 2003 (Tr. 28-31); however, prior to her hearing date, plaintiff waived the right to personally appear and testify, citing "nerves" as the reason for not appearing (Tr. 39).

The ALJ considered the case de novo, and on November 4, 2003, made the following findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date of disability.

3. The claimant's early osteopenia, hypertension, hypothyroidism, and obesity are considered "severe" based on the requirements in the Regulations 20 C.F.R. § 404.1520(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the residual functional capacity to lift/carry 50 pounds occasionally and 25 pounds frequently and to sit or stand/walk each six of eight hours.

7. The claimant's past relevant work as sewing machine operator and housekeeper (nursing home) did not require performance of work-related activities precluded by her residual functional capacity (20 C.F.R. § 404.1565).

8. The claimant's medically determinable impairments do not prevent the claimant from performing her past relevant

2

>        work.
>
>     9. The claimant was not under a "disability" as defined in
>        the Social Security Act at any time through the date of
>        the decision (20 C.F.R. § 404.1520(e)).

(Tr. 15).

The ALJ thus found that plaintiff was not disabled under Title II of the Act because she retained the residual functional capacity to return to her past relevant work as a garment factory worker or housekeeper. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on March 25, 2004 (Tr. 3-5). Plaintiff thereafter commenced this timely action, seeking judicial review of the Commissioner's decision. The district court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based on the record as a whole, then these findings are conclusive.

## II.  Review of the Record

The following is an overview of the medical evidence of record taken largely from the defendant's brief:

Since at least 1986, plaintiff has been continually treated by family practice physician, Dr. Michael Cox. In May 1986, thirteen years prior to plaintiff's alleged disability onset date, plaintiff presented to Dr. Cox complaining of left foot pain and swelling that had been off and on for two to three

3

months (Tr. 105). The problem was identified and treated as a probable calcaneal spur, for which she was prescribed medication and told to keep off her feet as much as possible (Id.). In October 1987, plaintiff presented with a painful joint in the right fifth finger. No apparent abnormalities other than an obvious trigger finger of the right fifth finger were noted (Tr. 105). In April 1989, plaintiff was diagnosed with pleurisy, which was resolved with medication (Tr. 104).

In 1993, plaintiff complained of pain in her upper right quadrant (Tr. 103, 113). X-rays were ordered and although a rib contusion was diagnosed, no evidence of a fracture was found. In March 1995, plaintiff was diagnosed with tendonitis based upon her complaints of soreness in the elbow, wrist, and hand (Tr. 102). In 1996, Dr. Cox treated plaintiff for hypertension; tinea pedis, also known as dermatitis; and possible diabetes (Tr. 98-101). Dr. Cox prescribed medication and recommended weight loss (Tr. 101).

In early 1998, plaintiff was experiencing bilateral tinnitus, continuing dermatitis, numbness in her hands and feet, and swelling in her feet from prolonged standing (Tr. 97). On December 2, 1998, Dr. Cox ordered lab work and discussed plaintiff's obesity and peeling hands with her (Tr. 96). Dr. Cox informed plaintiff that she had hypothyroidism and prescribed Synthroid (Tr. 96). Follow up visits in January, February, and

4

March of 1999 showed some improvement and weight loss. Dr. Cox did not prescribe any additional medication (Tr. 93-95). Further follow up showed that plaintiff was "feeling ok" though not fully compliant with her medications. Plaintiff refused medication for depression even though she reported crying episodes to Dr. Cox (Tr. 91). In May 2000, lab tests showed a change in her thyroid profile which resulted in an increase in her medication dosage (Tr. 90).

On February 21, 2001, the plaintiff presented to Dr. Cox with right knee pain following a twisting injury (Tr. 88-89). Dr. Cox ordered x-rays. The right knee revealed a narrow interspace, but the bony structures within the knee were unremarkable and the soft tissue shadows normal. Plaintiff was diagnosed with right knee strain, hypertension, hypothyroidism, and eczema (Tr. 88-89, 113). Plaintiff followed up by phone with Dr. Cox on February 26, 2001, noting that the medication had not helped and requesting a referral to an orthopedic surgeon (Tr. 87). Plaintiff was referred to Dr. Wilson, though no evidence of a visit with an orthopedic surgeon is found in the record before the Court.

On December 6, 2002, plaintiff was seen for her annual check-up. Dr. Cox noted that plaintiff was feeling "fairly well" (Tr. 85). Blood tests were ordered. Plaintiff refused recommendations for a mammogram, PAP, and colonoscopy (Id.).

5

Due to a change in insurance providers, plaintiff changed treating physicians and, on January 6, 2003, presented to Larry M. Mason, M.D., complaining of fatigue and weakness (Tr. 116). The physical exam was unremarkable. A review of her systems confirmed the existence of hypertension and hypothyroidism. No other symptoms were noted. The DEXA scan revealed findings consistent with osteopenia (Id.). Plaintiff followed up with Dr. Mason on January 20, 2003 for re-evaluation, which was also unremarkable (Tr. 115).

On February 7, 2003, a State Agency physician reviewed plaintiff's records, identifying her complaints of joint pain and hypertension, which was controlled by medication. The review also identified plaintiff's early osteopenia and hypothyroidism, which were also controlled by medication and caused no symptoms other than fatigue (Tr. 126).

Plaintiff is presently 63 years old, having been born on February 23, 1942 (Tr. 47). She was 61 in December 2003, the date at which she was last insured for disability benefits. Plaintiff possesses a limited, eighth-grade education and has received no special vocational training (Tr. 57). Plaintiff is married and lives with her husband. She last worked in February 1999 (Tr. 51) at a garment factory where she worked assembling overalls (Tr. 69). Plaintiff held this job from 1995 to 1999. Except for work as a housekeeper in a nursing home, plaintiff's

6

other relevant work history consists of work as a sewing machine operator and as a worker in an auto parts plant and in garment factories (Tr. 68-75). Plaintiff is 65 inches tall (Tr. 97) and her last examination in January 2003 before her scheduled hearing revealed a weight of 320 pounds (Tr. 50). Plaintiff has alleged that her hypertension, hypothyroidism, early osteopenia, and obesity have rendered her disabled and that she is entitled to DIB payments accruing from an onset date of February 1, 1999.

Because plaintiff waived her right to appear before the ALJ for her hearing, the ALJ issued his notice of decision from the written case record on November 4, 2003, denying claimant's application for DIB payments pursuant to Title II of the Social Security Act.

### III. Conclusions of Law

#### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. Jones v. Secretary, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. Landsaw v. Secretary, 803 F.2d 211, 213 (6th Cir. 1986).

7

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." Her v. Commissioner, 203 F.3d 388, 389 (6th Cir. 1999)(citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." Bell v. Commissioner, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. Her, 203 F.3d at 389 (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. Hurst v. Secretary, 753 F.2d 517, 519 (6th Cir. 1985).

B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process, as follows:

(1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically

denied.
(2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.
(4) If the claimant does not suffer from any listing-level Impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a <u>prima facie</u> case of disability.
(5) Once the claimant establishes a <u>prima facie</u> case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

<u>Moon v. Sullivan</u>, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. <u>Id.</u> In such cases where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's <u>prima facie</u> case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform

9

specific jobs, which is typically obtained through vocational expert (VE) testimony. See Varley v. Secretary, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity (RFC) for purposes of the analysis required at steps four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement of Errors

The plaintiff alleges two errors in the decision to deny her Title II benefits: (1) the ALJ erred in failing to fully develop the record because the record lacks medical assessments and (2) the ALJ failed to fully consider plaintiff's obesity. As described below, the undersigned finds no merit in these allegations.

Plaintiff first alleges that the ALJ failed to fully develop the record because the record is devoid of medical assessments required by 20 C.F.R. § 416.1513. However, Part 416 deals specifically with Supplemental Security Income ("SSI") claims and not with Disability Insurance Benefits claims such as the one at issue here. DIB procedures are found in Part 404 of the Regulations, and the pertinent provisions on medical and other evidence to demonstrate a claimant's impairments are found at 20

10

C.F.R. § 404.1513 and state as follows:

> §§ 404.1513 Medical and other evidence of your impairment(s).
>
> (a) Sources who can provide evidence to establish an impairment. We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s). <u>See</u> §§ 404.1508. Acceptable medical sources are—
>  (1) Licensed physicians (medical or osteopathic doctors);
>  (2) Licensed or certified psychologists. Included are school psychologists, or other licensed or certified individuals with other titles who perform the same function as a school psychologist in a school setting, for purposes of establishing mental retardation, learning disabilities, and borderline intellectual functioning only;
>
> ...
>
> (b) Medical reports. Medical reports should include—
>  (1) Medical history;
>  (2) Clinical findings (such as the results of physical or mental status examinations);
>  (3) Laboratory findings (such as blood pressure, x-rays);
>  (4) Diagnosis (statement of disease or injury based on its signs and symptoms);
>  (5) Treatment prescribed with response, and prognosis; and
>  (6) A statement about what you can still do despite your impairment(s) based on the acceptable medical source's findings on the factors under paragraphs (b)(1) through (b)(5) of this section (except in statutory blindness claims). <u>Although we will request a medical source statement about what you can still do despite your impairment(s), the lack of the medical source statement will not make the report incomplete</u>. See §§ 404.1527.
>
> (c) Statements about what you can still do. At the administrative law judge and Appeals Council levels, we will consider residual functional capacity assessments made by State agency medical and psychological consultants and other program physicians and psychologists to be "statements about what you can still do" made by nonexamining physicians and

11

Case 2:04-cv-00080   Document 21   Filed 07/13/05   Page 11 of 20 PageID #: 11

psychologists based on their review of the evidence in the
case record.  Statements about what you can still do (based
on the acceptable medical source's findings on the factors
under paragraphs (b)(1) through (b)(5) of this section)
should describe, but are not limited to, the kinds of
physical and mental capabilities listed as follows (See §§§
404.1527 and 404.1545(c)):
> (1) The acceptable medical source's opinion about your
> ability, despite your impairment(s), to do work-related
> activities such as sitting, standing, walking, lifting,
> carrying, handling objects, hearing, speaking, and
> traveling; and
> (2) In cases of mental impairment(s), the acceptable
> medical source's opinion about your ability to
> understand, to carry out and remember instructions, and
> to respond appropriately to supervision, coworkers, and
> work pressures in a work setting.

...

(e) Completeness.  The evidence in your case record,
including the medical evidence from acceptable medical
sources (containing the clinical and laboratory findings)
and other medical sources not listed in paragraph (a) of
this section, information you give us about your medical
condition(s) and how it affects you, and other evidence from
other sources, <u>must be complete and detailed enough to allow
us to make a determination</u> or decision about whether you are
disabled or blind.  It must allow us to determine—
> (1) The nature and severity of your impairment(s) for
> any period in question;
> (2) Whether the duration requirement described in §§
> 404.1509 is met; and
> (3) Your residual functional capacity to do work-
> related physical and mental activities, when the
> evaluation steps described in §§ 404.1520(e) or (f)(1)
> apply.

(emphasis supplied).

The plaintiff relies on the district court's ruling in

<u>Samuels v. Heckler</u>, 668 F.Supp. 656 (W.D. Tenn. 1986), for the

proposition that a failure to produce a medical assessment of the

claimant's ability to do such work-related activities as

12

standing, walking, lifting, etc. constitutes legal error, and requests that she be examined by consulting mental and physical health professionals. However, the undersigned believes that this case is distinguishable from Samuels and that even without the medical assessment, the ALJ was nevertheless justified in refusing to award plaintiff DIB payments because the record was complete enough for him to make his determination.

The plaintiff first asserts that at least one medical assessment of ability to do work-related activities (at government expense, if necessary) is required for a fair determination of a claimant's Social Security application. While Samuels could be read for this proposition as it applies to proceedings before the state agency, such an interpretation of the regulations as they currently are written is not warranted. As stated in the regulations, "a consultative exam may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on [one's] claim." 20 C.F.R. § 404.1519a(b) (emphasis supplied). By negative implication then, if the ALJ feels the record is complete enough to make his determination, a medical assessment of the claimant's exertional capabilities would not be required. See also 20 C.F.R. § 404.1513(b)(6) ("Although we will request a medical source statement about what you can still do despite your impairment(s), the lack of the medical source statement will not

13

make the report incomplete."). The Sixth Circuit has held, consistent with these regulations, that the ALJ is not required to refer claimants to consulting specialists, but simply has the authority to do so if existing medical sources in the record do not contain sufficient evidence to make a determination. <u>Landsaw v. Sec. of Health and Human Servs.</u>, 803 F.2d 211 (6th Cir. 1986). As long as the evidence in the record provides the ALJ with sufficient information to determine (1) the nature and severity of claimant's impairment(s) for any period in question, (2) whether the duration requirement described in § 404.1509 is met; and (3) the claimant's residual functional capacity to do work-related physical and mental activities, the record is complete and detailed enough. 20 C.F.R. § 404.1513(e).

Plaintiff also asserts that the ALJ's decision to assign a residual functional capacity and deny benefits without a medical assessment of exertional capabilities amounted to an impermissible substitution of the ALJ's judgment for that of a medical expert. However, in making this allegation, the plaintiff ignores the medical opinion supplied by the state agency medical consultant, which supports both the ALJ's decision not to order a consultative exam and his ultimate determination of the case (Tr. 126).

In reviewing the evidence of record, the medical consultant found that the claimant's impairments were "not severe, singly or

14

combined" (Tr. 126). "Severe impairment," as it is used in Social Security cases, is a term of art that means any impairment "that significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); see also Bowen v. Yuckert, 482 U.S. 137, 141 (1987)(interpreting the "severity regulation"). By definition, then, if a claimant's physical and mental ailments are found nonsevere, they do not in any way inhibit the claimant from performing basic work activities. This medical consultant's opinion that plaintiff suffers from no severe impairments implicitly carries with it a conclusion that her medical problems do not limit her work-related exertional capabilities.

The fact that no doctor's assessment calculated plaintiff's exertional abilities before the ALJ made his decision does not render that decision erroneous because the record in the instant case does not support any limitations on the claimant's ability to work besides the plaintiff's own testimony to that fact. In light of that testimony and giving plaintiff the benefit of any doubt, the ALJ allowed the inquiry to proceed past the second step of the sequential evaluation process, but in so doing the ALJ did not bind himself to order additional examination reports despite a record which does not justify such measures. As pointed out above, the decision to seek out medical assessments to further complete the record is a discretionary one, and here

15

there was no conflict to be solved or gap to be filled by a consultative examination. See 20 C.F.R. § 404.1257 (c). In a Social Security case, it is the claimant who shoulders the dual burdens of production and persuasion through step four of the sequential analysis, which includes determining the claimant's RFC. Bowen, 482 U.S. 137, 146 n. 5 (1987). If the claimant's evidence fails to raise a question as to her ability to perform her past relevant work, the ALJ is not required to continue to gather evidence out of an abundance of caution, in ensuring that the record is fully and fairly developed. Cf. Her v. Commissioner, 203 F.3d 388, 391 (6th Cir. 1999)("If a claimant does not secure an official 'Residual Functional Capacity' assessment by a medical or psychological examiner, and simply relies on other evidence to prove his impairments, it does not follow that the Commissioner subsequently must provide the RFC assessment at step five.").

As the Commissioner points out in her brief, plaintiff claims disability based partly on the hypertension and hypothyroidism from which she suffers, but both are being controlled with medication. It has been held that impairments such as hypertension and hypothyroidism are not disabling if controlled by medication. Houston v. Secretary of Health and Human Servs., 736 F.2d 365, 367 (6th Cir. 1984)("The medical evidence reflected that plaintiff's impairments were controlled

16

with medication and were not severely disabling."); <u>Gist v. Secretary of Health and Human Servs.</u>, 736 F.2d 352, 356-57 (6th Cir. 1984)(The fact that "the plaintiff's own treating physician...reported that her anemia, high blood pressure, and thyroid condition where under control" and repeated hospital visits were made simply to adjust medication levels provided substantial evidence that claimant did not have a "severe impairment.").

    Moreover, the plaintiff's other medical problems in the record have been transient and treatable. Plaintiff has been treated periodically for swelling and dermatitis of the hands and feet (Tr. 96, 97, 100, 101). Diagnostic studies of all plaintiff's systems revealed only findings of early osteopenia, a decrease in bone mass (Tr. 115). The claimant alleges joint pains also contribute to her disabled state, but the record is devoid of any medical evidence of underlying joint disease or injury which would bear out the allegation of pain in the joints. Most recently, the plaintiff had x-rays done on her knee after a twisting incident in 2001 (Tr. 113). The x-rays were negative and revealed no underlying joint problems (Id.). Because the plaintiff has failed to produce evidence sufficient to meet her burden in this case or to otherwise justify further investigation at government expense, the ALJ's decision appears to be supported by substantial evidence.

Plaintiff also alleges that the ALJ failed to fully consider her obesity in his final decision. When determining whether a claimant with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at all other steps of the sequential evaluation process -- including when assessing an individual's residual functional capacity -- adjudicators must consider any additional and cumulative effects of obesity. SSR 02-1p. The claimant argues that the ALJ "hardly mentions" her obesity in his decision.

While SSR 02-1p is instructive on how obesity should be factored into determinations of Title II and Title XVI benefits claims, it does not require adjudicators to do anything other than what is always done when a claimant presents a combination of impairments: proceed with the evaluation of the claim taking into account all medical and nonmedical factors in the aggregate. In his decision, the ALJ noted that plaintiff's condition was exacerbated by obesity and she had been advised by her physicians to lose weight (Tr. 14). He also considered Social Security Ruling 00-3p, which was the Social Security Administration's previous instruction on obesity superseded by SSR 02-1p, noting that obesity can cause additional limitation of function for individuals with a condition such as arthritis/osteopenia because of the additional stress it causes on joints (Id.).

The ALJ properly considered plaintiff's obesity, and the

record supports the ALJ's finding that although plaintiff's obesity exacerbated her health problems, even despite her heavy weight, she had worked for many years (Tr. 14, 52, 68-73). Moreover, the ALJ -- while noting that there were no medical sources that identified any physical or mental disorders which alone limit the plaintiff's ability to perform basic work activities -- reduced her exertional capacity to medium because of her loss of energy and continued complaints of fatigue associated with her combination of obesity and other medical problems.

While plaintiff's subjective complaints of pain are not compatible with this RFC, the evidence of record supports the ALJ's decision to discount the credibility of those complaints. The plaintiff has proffered no evidence of a condition that is ongoing that is not being controlled with medication, let alone demonstrated medically why her subjective claims of joint pain should be fully credited.  There was no basis for finding that plaintiff's obesity alone, or when combined with her relatively mild musculoskeletal condition, would preclude all work activity. She had worked for many years despite her weight and also admitted that her daily activities included household work (Tr. 64).  The undersigned therefore finds that the ALJ did properly consider claimant's obesity in his determinations, and his assignment of claimant's "Medium" RFC is supported by substantial

evidence.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that claimant's motion for judgment on the administrative record be **DENIED**, and that the decision of the Commissioner be **AFFIRMED**.

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 13th day of July, 2005.

    /s/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge